**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVE SANDS<br><br>                      Plaintiff,<br><br>     v.<br><br>WHAT'S TRENDING, INC.<br><br>                   Defendant. | Civil Action No. 1:20-CV-02735-GBD<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |

BOWLES & JOHNSON PLLC
David K. Bowles
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
David@BoJo.Law

*Attorneys for Defendant What's Trending, Inc.*

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     FACTS AND PROCEDURAL HISTORY ........................................................... 2

   a.     Plaintiff's Counsel Is A Copyright Troll with A History of Sanctions ................... 2

   b.    Defendant Has Previously Settled a Lawsuit with Plaintiff's Counsel .................... 3

   c.    The Photo Appears in Many Places on the Internet ................................................. 4

   d.    The Article Provides News and Context for the Photo ........................................... 4

   e.    Defendant Had No Notice That the Materials Were Copyrighted ........................... 4

   f.     Plaintiff Has Minimally Amended the Complaint .................................................... 5

III.    ARGUMENT ........................................................................................................ 5

   a.     Due to Plaintiff's Counsel's History and Practice, this Complaint Should Be
Viewed with Caution ............................................................................................... 5

   b.    The Complaint Fails to State a Claim ...................................................................... 5

   c.    Defendant's Use of the Photograph Was Fair Use .................................................. 6

      1.    The Purpose And Character Of The Use ............................................................. 7

      2.    The Nature Of The Copyrighted Work ............................................................... 9

      3.    The Amount And Substantiality Of The Portion Used In Relation To The
Copyrighted Work As A Whole ...................................................................... 10

      4.    The Effect Of The Use Upon The Potential Market For Or Value Of The
Copyrighted Work ........................................................................................... 10

IV.    CONCLUSION .................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Authors Guild v. Google, Inc.</u>, 804 F.3d 202, 212 (2d Cir. 2015). ........................................ 6, 9, 10

<u>Barcroft Media, Ltd. v. Coed Media Grp., LLC</u>, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017).......... 8

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929
(2007) ...................................................................................................................................... 5

<u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994) .... 7

<u>Lee v. W Architecture & Landscape Architecture, LLC</u>, No. 18CV05820PKCCLP, 2019 WL
2272757, at *1 (E.D.N.Y. May 28, 2019) ............................................................................. 3, 5

<u>Leibowitz v. Galore Media, Inc.</u>, No. 18CIV2626RAHBP, 2018 WL 4519208, at *5 (S.D.N.Y.
Sept. 20, 2018)........................................................................................................................... 3

<u>McDermott v. Monday Monday, LLC</u>, No. 17CV9230 (DLC), 2018 WL 5312903, at *3 (S.D.N.Y.
Oct. 26, 2018) ........................................................................................................................... 2

<u>McKnight v. What's Trending, Inc.</u>, Case No: 1:17-cv-08598-PGG (S.D.N.Y. 2017) ................... 3

<u>Mondragon v. Nosrak LLC</u>, No. 19-CV-01437-CMA-NRN, 2020 WL 2395641, at *5 (D. Colo.
May 11, 2020) ........................................................................................................................... 3

<u>Religious Tech. Ctr. v. Lerma</u>, 908 F. Supp. 1362, 1366 (E.D. Va. 1995) ...................................... 9

<u>Reynolds v. Hearst Commc'ns, Inc.</u>, No. 17CV6720(DLC), 2018 WL 1229840, at *1 (S.D.N.Y.
Mar. 5, 2018), <u>reconsideration denied,</u> No. 17CV6720(DLC), 2018 WL 1602867 (S.D.N.Y.
Mar. 29, 2018) .......................................................................................................................... 3

<u>Rice v NBCUniversal Media, LLC</u>, 19-CV-447 (JMF), 2019 WL 3000808, at *1 [SDNY July 10,
2019].......................................................................................................................................... 2

<u>Rock v. Enfants Riches Deprimes, LLC</u>, No. 17-CV-2618 (ALC), 2020 WL 468904, at *3
(S.D.N.Y. Jan. 29, 2020) ....................................................................................................... 2, 4

<u>Steeger v. JMS Cleaning Servs., LLC</u>, No. 17CV8013(DLC), 2018 WL 1363497, at *1 (S.D.N.Y.
Mar. 15, 2018) ........................................................................................................................... 2

<u>Walsh v. Townsquare Media, Inc.</u>, No. 19-CV-4958 (VSB), 2020 WL 2837009, at *4 (S.D.N.Y.
June 1, 2020) ................................................................................................................. 7, 8, 9, 10

<u>Wisser v. Vox Media, Inc.</u>, No. 19 CIV 1445 (LGS), 2020 WL 1547381, at *9 (S.D.N.Y. Apr. 1,
2020)........................................................................................................................................... 2

<u>Yang v. Mic Network, Inc.</u>, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019). ............................ 6, 7, 8, 9

**Statutes**

17 U.S.C.A. § 106 (West)................................................................................................................ 5

17 U.S.C.A. § 107 (West)............................................................................................................. 6, 8

17 U.S.C.A. § 501 (West)................................................................................................................ 5

**Rules**

Rule 12(b)(6) .................................................................................................................................. 5

I.      **PRELIMINARY STATEMENT**

Plaintiff Steve Sands ("Plaintiff") has brought an action for copyright infringement against defendant What's Trending, Inc. ("Defendant").  Plaintiff claims Defendant published, without license or permission, a single photograph from a collection of 672 registered photographs.  The photograph is of Joaquin Phoenix on the set of the movie Joker (the "Photo"). The Photo appeared in Defendant's online publication in a news article regarding the Photo, and the upcoming movie.  Plaintiff's counsel is Richard Liebowitz, a copyright troll frequently sanctioned by this court and often subject to bond requirements in order to maintain cases before this court.

Plaintiff fails to consider the exception of the fair use doctrine, embodied in section 107 of the Copyright Act. Defendant's article was clearly a news article providing commentary, speculation, and criticism of the upcoming movie.  Courts consider this sort of use to be "transformative," and therefore fair.

It is also critical to note that there was no way at all that Defendant could have known that the Photo was copyrighted, or indeed who the author of the Photo was. Even in the copy of the Photo attached to the complaint, there is no watermark, no indication of authorship, and not even a copyright mark.  The Photo was not in fact registered as copyrighted until October 4, 2018, approximately two weeks after the alleged infringement.  Defendant clearly did not act in bad faith here.

In sum, Defendant's use of the Photo was fair use under the law, providing news and commentary on the photograph at issue. Under settled precedent in this court, the case should be dismissed.

II.   **FACTS AND PROCEDURAL HISTORY**

a.   Plaintiff's Counsel Is A Copyright Troll with A History of Sanctions

As the Court is aware, Plaintiff's counsel is a "copyright troll" with a history of

sanctions.  On July 27, 2020, Plaintiff's counsel filed a notice of a June 26, 2020 order of Judge

Jesse M. Furman of this court, detailing sanctions against Plaintiff's counsel in the matter of

Usherson v. Bandshell Artist Management, 19-cv-6368(JMF).  Dkt. 15.  As Judge Furman put it

in an earlier opinion:

> In his relatively short career litigating in this District, Richard Liebowitz has
> earned the dubious distinction of being a regular target of sanctions-related
> motions and orders.  Indeed, it is no exaggeration to say that there is a growing
> body of law in this District devoted to the question of whether and when to
> impose sanctions on Mr. Liebowitz alone.

Rice v NBCUniversal Media, LLC, 19-CV-447 (JMF), 2019 WL 3000808, at *1 [SDNY July

10, 2019], report and recommendation adopted, 19-CV-447 (JMF), 2019 WL 3752491 [SDNY

Aug. 8, 2019] (awarding sanctions).  The term "copyright troll" has been held by this court to

apply to him:

> As evidenced by the astonishing volume of filings coupled with an astonishing
> rate of voluntary dismissals and quick settlements in Mr. Liebowitz's cases in this
> district, it is undisputable that Mr. Liebowitz is a copyright troll.

McDermott v. Monday Monday, LLC, No. 17CV9230 (DLC), 2018 WL 5312903, at *3

(S.D.N.Y. Oct. 26, 2018).  In the Usherson opinion, the court noted that since 2017 he had filed

over 1,280 copyright infringement cases in this District.  Dkt. 15 at 1.

Plaintiff has in the past been sanctioned by this court for a failure to ensure that a

photograph – upon which he based a copyright claim – was properly registered.  "Mr. Liebowitz

had the responsibility to ensure that the Photograph was registered before filing the Complaint."

Rock v. Enfants Riches Deprimes, LLC, No. 17-CV-2618 (ALC), 2020 WL 468904, at *3

(S.D.N.Y. Jan. 29, 2020), reconsideration denied sub nom. Rock v. Enfants Riches Deprimes,

LLC., No. 1:17-CV-2618 (ALC), 2020 WL 2793026 (S.D.N.Y. May 29, 2020) (awarding sanctions).  *See also* Steeger v. JMS Cleaning Servs., LLC, No. 17CV8013(DLC), 2018 WL 1363497, at *1 (S.D.N.Y. Mar. 15, 2018) (sanctioning counsel and requiring him to complete CLE in ethics and professionalism); Wisser v. Vox Media, Inc., No. 19 CIV. 1445 (LGS), 2020 WL 1547381, at *9 (S.D.N.Y. Apr. 1, 2020) (sanctioning counsel and requiring law firm policy changes).  Apparently, Mr. Liebowitz has also had an order of disbarment in California.  Mondragon v. Nosrak LLC, No. 19-CV-01437-CMA-NRN, 2020 WL 2395641, at *5 (D. Colo. May 11, 2020).

Some judges in this court have also begun to require posting of bonds as a condition of allowing him to litigate:

> Given Mr. Liebowitz's filing of dubious claims and repeated proven misconduct, some judges of the Eastern and Southern Districts of New York have required Mr. Liebowitz's clients to post cost bonds as a condition of proceeding with their cases.

Mondragon, 2020 WL 2395641, at *5.  *See also* Lee v. W Architecture & Landscape Architecture, LLC, No. 18CV05820PKCCLP, 2019 WL 2272757, at *1 (E.D.N.Y. May 28, 2019) (granting motion for bond); Reynolds v. Hearst Commc'ns, Inc., No. 17CV6720(DLC), 2018 WL 1229840, at *1 (S.D.N.Y. Mar. 5, 2018), reconsideration denied, No. 17CV6720(DLC), 2018 WL 1602867 (S.D.N.Y. Mar. 29, 2018) (granting application for bond); Leibowitz v. Galore Media, Inc., No. 18CIV2626RAHBP, 2018 WL 4519208, at *5 (S.D.N.Y. Sept. 20, 2018) (denying reconsideration on bond).

    b.    Defendant Has Previously Settled a Lawsuit with Plaintiff's Counsel

Mr. Liebowitz apparently regards Defendant to be a soft target, since he previously brought an action against Defendant and obtained a settlement.  *See* McKnight v. What's Trending, Inc., Case No: 1:17-cv-08598-PGG (S.D.N.Y. 2017).

 c. <u>The Photo Appears in Many Places on the Internet</u>

 The Photo is readily available from many sources on the internet.  An image search revealed over 20 websites in which the photo appears.  Declaration of David K. Bowles ("Bowles Dec.") at ¶2.  For example, a website called "Screen Robot" published a copy of the photograph on September 19, 2018.[1]  As can be seen in this website, there is no indication of any copyright protection on the published photograph.

 d. <u>The Article Provides News and Context for the Photo</u>

 The point of the article in Defendant's publication was that Photo, and other photos like it, were the *first* pictures publicly available of Joaquin Phoenix playing the Joker character in the movie of the same name.  Complaint, Ex. C.  The article discussed the history of other characters, such as Jared Leto, playing the same role.  <u>Id.</u>  The article discusses the possible comic book origins of the storyline and the probable plot of the movie.  <u>Id.</u>  The existence of the photos themselves was the news and was the point of the publication.

 e. <u>Defendant Had No Notice That the Materials Were Copyrighted</u>

 The Photo bears no copyright mark, or any other indication that it is protected by copyright, or indeed of its source.  Complaint, Ex. A.  There is no watermark, logo, or copyright symbol.  <u>Id.</u>  Likewise, the Photo as it appears elsewhere on the internet bear no indication of copyright protection.  Bowles Dec. at ¶2 and sources cited therein; *see also* footnote 1, *supra*.  There was no way for Defendant to know that the Photo was subject to copyright protection, or indeed to discern who the copyright holder was in order to contact him and obtain a license.

---

[1] https://screenrobot.com/joaquin-phoenix-joker-first-pictures/

f.      Plaintiff Has Minimally Amended the Complaint

Defendant filed an initial motion to dismiss on July 17, 2020, citing fair use and good faith in Defendant's use of the Photo.  Dkt. 13 (re-filed for technical reasons as Dkt. 16-18). Rather than respond to Defendant's motion, on August 16, 2020, Plaintiff filed an amended complaint.  Dkt. 19.  Plaintiff's changes to the original complaint were minimal, and in no way cure the deficiencies of the original complaint.

III.    **ARGUMENT**

a.      Due to Plaintiff's Counsel's History and Practice, this Complaint Should Be Viewed with Caution

As discussed above in Section II.a, Plaintiff's counsel has repeatedly vexed this court and many, many defendants.  Among other things, he has failed to verify that the copyrights he has sued upon were actually properly registered.  Rock, 2020 WL 468904, at *3.  Courts have also required him to post bonds as a condition of proceeding.  *See, e.g.,* Lee, 2019 WL 2272757, at *1.

Records from the Copyright Office indicate that the registration number claimed by Plaintiff is a collection of 672 photographs.  Bowles Dec. at ¶3 and Ex. B.  It is impossible to discern from the registration whether the photograph that appears at Exhibit A is actually registered within this collection.  Since Plaintiff's counsel has made this error before, should the case not be dismissed, Plaintiff will seek discovery on the registration, and will likely request the posting of a bond.

b.      The Complaint Fails to State a Claim

The Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do. . . . Factual allegations must be enough to raise a right to relief above the

speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65,

167 L. Ed. 2d 929 (2007).

Here, as demonstrated below, Plaintiff fails to state a claim as a matter of law, because

the Photo, and the article containing it, are clearly fair use under the Copyright Act.  The claim

should therefore be dismissed.

      c.    Defendant's Use of the Photograph Was Fair Use

Plaintiff has asserted a claim under Sections 106 and 501 of the Copyright Act.

Complaint at ¶14.  Section 106 gives the holder of a copyright the exclusive right to reproduce

the work.  17 U.S.C.A. § 106 (West).  Section 501 provides the copyright holder with a right to

sue infringers.  17 U.S.C.A. § 501 (West).  The copyright holder can recover actual damages or

statutory damages from $750 to $30,000, as the court considers just.  17 U.S.C.A. § 504 (West).

In cases of willful infringement, the infringer can be liable for up to $150,000 in statutory

damages.  Id.

However, Section 107 of the Copyright Act provides an exception for fair use of a

copyrighted work.  This includes "purposes such as criticism, comment, *news reporting*, teaching

(including multiple copies for classroom use), scholarship, or research, is not an infringement of

copyright."  17 U.S.C.A. § 107 (West) (emphasis added).  Pursuant to Section 107, courts should

examine four factors in determining whether a particular use is fair.  Authors Guild v. Google,

Inc., 804 F.3d 202, 212 (2d Cir. 2015).  These factors are:

    (1) the purpose and character of the use, including whether such use is of
    a commercial nature or is for nonprofit educational purposes;

    (2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

Authors Guild, 804 F.3d at 212–13.  Each of these factors is examined below.

       1.      The Purpose And Character Of The Use

Courts have held that the first factor, purpose and character of use, "involves three sub-factors, which involve determining whether the use is: (1) transformative; (2) for commercial purposes; or (3) in bad faith."  Yang v. Mic Network, Inc., 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019).  In Yang, the plaintiff had taken a photograph of a celebrity, which was published in the New York Post.  The defendant published a screenshot of the Post article and commented on it. Id. at 541.  Defendant moved to dismiss based on the fair use exception.  Id.  The court dismissed the case, holding that the publication of the photograph with commentary was "transformative," and therefore fair use.

As to the other sub-factors, the court held that the fact that the article was published for commercial benefit weighed against fair use, but "when the use of the work was transformative, this factor is of 'less significance.'"  Yang, 405 F. Supp. at 545–546.  The court also held that it was plausible that the defendant acted in bad faith, because the defendant removed the part of the photograph that indicated ownership of the work.  Id. at 546.  The court held that the use was fair and dismissed the case.  Id. at 548.

The Second Circuit has noted that "[a]mong the best recognized justifications for copying from another's work is to provide comment on it or criticism of it."  Id. at 215.  "[C]opying from an original for the purpose of criticism or commentary on the original or provision of information about it, tends most clearly to satisfy Campbell 's notion of the "transformative" purpose

involved in the analysis of Factor One."  Id. at 215-216 (citing to Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994) (footnote omitted).

The very recent case of Walsh v. Townsquare Media, Inc., No. 19-CV-4958 (VSB), 2020 WL 2837009, at *4 (S.D.N.Y. June 1, 2020) is on point here.  In that case, an online website had published a copyrighted photograph of the performer Cardi B.  The photograph accompanied an article describing how Cardi B had partnered with the fashion designer Tom Ford with regard to a new shade of lipstick.  Defendant had moved for judgment on the pleadings, and the court considered whether the fair use exception applied.  The court noted:

> . . . use of a copyrighted photograph may be appropriate where "*the copyrighted work is itself the subject of the story*, transforming the function of the work in the new context". . . . "For instance, a news report about a video that has gone viral on the Internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about."

Walsh v. Townsquare Media, Inc., No. 19-CV-4958 (VSB), 2020 WL 2837009, at *4 (S.D.N.Y. June 1, 2020) (emphasis added).  The court granted the motion to dismiss.  Id. at *8.  *See also* Barcroft Media, Ltd. v. Coed Media Grp., LLC, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) ("[d]isplay of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about* that work") (emphasis in original); Hughes v. Benjamin, 437 F. Supp. 3d 382, 395 (S.D.N.Y. 2020) (motion to dismiss granted based on fair use).

Here, as in Yang and Walsh, Defendant's use of the Photo was fair use under Section 107.  The two cases are virtually identical to this case.  In this case, Defendant published the Photo with commentary both on the photograph's contents – describing the character as "a slimy, slithery, skinny long haired creep," and the likely contents of the upcoming Joker movie, based on plot lines from various comic book sources.  Complaint, Ex. C.  As in Yang and Walsh,

Defendant has published news – in this case about the movie – using the photograph to illustrate the article.  This is transformative, and therefore this factor weighs strongly in favor of fair use.

As to the second sub-factor, Plaintiff has minimally alleged that Defendant is a "for-profit" entity (Dkt. 19 at ¶9), but has not alleged that Plaintiff used the Photo for commercial purposes.  In any case, as Yang teaches, this sub-factor is less significant when the work is transformative.  Yang, 405 F. Supp. at 545–546.

As to the third sub-factor, there is no showing whatsoever that Defendant acted in bad faith by using the Photo.  Unlike in Yang, where the defendant removed a portion of a photograph that showed ownership – an action that suggested bad faith – here there was no indication of ownership to begin with.  As started above in Section II.e, even the copy of the Photo provided by Plaintiff has no indication of ownership. There is no watermark, indication of authorship, or even a copyright symbol to be found. Complaint, Ex. A. Indeed, the Photo was not registered with the Copyright Office until October 4, 2018, some two weeks *after* the alleged infringement on September 17, 2018.  Complaint, Ex. B.  As further discussed above, the Photo was extensively present on the internet, and was without indication of ownership there either. There appears to be no way that Defendant could have known the Plaintiff was the author of the work, or that it was protected, or any indication of any way in which Plaintiff could have obtained a license from Defendant for use of the Photo.  There is no indication of bad faith here.

Accordingly, as in Yang, Walsh, and the other cases cited above, this factor weighs strongly in favor of a finding of fair use.

### 2.   The Nature Of The Copyrighted Work

The second factor is the nature of the copyrighted work.  Under the circumstances, this appears to be a fairly insignificant factor. The Second Circuit has noted that the "second factor has rarely played a significant role in the determination of a fair use dispute." Authors Guild,

804 F.3d at 220.  Further, "[u]nder the second factor, the scope of the fair use doctrine is greater with respect to factual works than creative or literary works."  Religious Tech. Ctr. v. Lerma, 908 F. Supp. 1362, 1366 (E.D. Va. 1995) (holding that news reporting that published copyrighted religious works was fair).

Here, the photo is simply a photograph of Joaquin Phoenix on the set of the joker.  The article at issue, as discussed above, is a commentary both on the photo and on the movie.  The article is a news report, which is a factual work, and therefore this factor is insignificant to the analysis.

3.     The Amount And Substantiality Of The Portion Used In Relation To The Copyrighted Work As A Whole

The third factor is the amount insubstantiality of the portion used in relation to the copyrighted work as a whole.  "The clear implication of the third factor is that a finding of fair use is more likely when small amounts, or less important passages, are copied than when the copying is extensive, or encompasses the most important parts of the original."  Authors Guild, 804 F.3d at 221.

Here, the copyrighted work consists of 672 individual photographs, all copyrighted as a group. Plaintiff used only one of these photographs. Therefore, the work used was a very small portion of the entire copyrighted collection of photographs.  This factor therefore also weighs in favor of fair use.

4.     The Effect Of The Use Upon The Potential Market For Or Value Of The Copyrighted Work

The fourth and final factor is the use on the potential market for the copyrighted work. Courts have held that this factor "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of

significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." <u>Authors Guild</u>, 804 F.3d at 223.

In <u>Walsh</u>, as to this factor the court noted that "because the Photograph did not appear on its own, but as part of the Post, alongside text and another image, it is implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of her work." <u>Walsh</u>, 2020 WL 2837009, at *8.  Exactly the same is true here.  There is no indication whatsoever that Plaintiff's use of a single photograph out of the 672 photographs registered would in any way harm Plaintiff's ability to license and sell those works.  This factor therefore weighs in favor of fair use.

Accordingly, all four of the factors either weigh in favor of fair use, or are neutral. Defendant's use for the Photo falls within section 107 of the Copyright Act, and therefore the case should be dismissed.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Defendant respectfully requests that the court grant Defendant's motion and dismiss the case with prejudice in its entirety.

Dated:  New York, New York
      August 31, 2020

BOWLES & JOHNSON PLLC

_____
David K. Bowles
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
David@BoJo.Law

*Attorneys for the Defendant*

11