UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVE SANDS,

                    Plaintiff,                          Case No. 1:20-cv-02735 (GBD-KHP)

        - against -

WHAT'S TRENDING, INC.

                    Defendant.

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ......................................................................................................................... 6

POINT I:      THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW............................... 6

A.   THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE ................................... 6

(1)   Defendant's Secondary Use is NOT Transformative ....................................... 6

(a)   The Newsworthiness of the Photograph is Not Dispositive .......................... 8

(b)   Defendant Used the Photo to Show What it Depicts: the Joker ................... 8

(c)   Defendant Did Not Report on Any Controversy Surrounding the Existence the
Photograph Itself ...................................................................................... 10

(d)   Defendant Has Not Transformed the Original Intended Use of the Photograph ....... 11

(e)   The Cases of Walsh and Yang are Inapposite; Sands v. CBS is Analogous ............ 12

(2)   Defendant's Use is Commercial Rather Than Non-Profit ............................. 13

B.   THE SECOND FACTOR WEIGHS AGAINST FAIR USE ........................................... 13

C.   THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT PUBLISHED A
FULL-COLOR, FULL-SCALE REPRODUCTION OF THE IMAGE WITHOUT ALTERATION ... 14

D.   THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL
MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET .............................. 15

POINT II:     COPYRIGHT INFRINGEMENT IS A STRICT LIABILITY OFFENSE ............. 18

POINT III:    CONGRESS PLACES THE EVIDENTIARY BURDEN ON DEFENDANT TO
SEEK OFFICIAL DEPOSIT COPIES FROM THE COPYRIGHT OFFICE ....... 20

CONCLUSION..................................................................................................................... 23

## TABLE OF AUTHORITIES

### CASES

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe,*
  131 F. Supp. 3d 196, 210 (S.D.N.Y. Sept. 18, 2015) ............................................ 5

*Arista Records, LLC v. Doe 3,*
  604 F.3d 110, 120 (2d Cir. 2010) ............................................................................ 5

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678 (2009) .......................................................................................... 4

*Associated Press v. Meltwater U.S. Holdings,*
  931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) ...................................................... 11, 14

*Barcroft Media, Ltd. v. Coed Media Group, LLC,*
  No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017) ............. 8, 10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 570 (2007) .......................................................................................... 4

*Blanch v. Koons,*
  467 F.3d 244, 251 (2d Cir. 2006) ...................................................................... 6, 13

*Burrow-Giles Lithographic Co. v. Sarony,*
  111 U.S. 53, 60 (1884) ............................................................................................ 20

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.,*
  196 F.Supp.3d 395, 407 (S.D.N.Y. 2016) ...................................................... 1, 21

*Cable/Home Commc'n Corp. v. Network Prods., Inc.,*
  902 F.2d 829, 845 (11th Cir.1990) ....................................................................... 17

*Campbell v. Acuff– Rose Music, Inc.,*
  510 U.S. 569, 579 (1994) ................................................................................. passim

*Chicoineau v. Bonnier Corp.,*
  No. 18-CV-3264, 2018 WL 6039387, at *2 (S.D.N.Y. Oct. 16, 2018) ............... 22

*EMI Christian Music Group, Inc. v. MP3tunes, LLC,*

844 F.3d 79, 89 (2d Cir. 2016)...........................................................................18

*Falk v. Brett Lithographing Co.*,
48 F. 678, 679 (C.C.S.D.N.Y. 1891) ...................................................19

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
624 F.3d 106, 108 (2d Cir. 2010)...........................................................4

*Ferdman v. CBS Interactive, Inc.*,
17-cv-1317 (PGG), 2018 WL 4572241, *19 (S.D.N.Y. Sept. 21, 2018)............16

*Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.*,
807 F.2d 1110, 1113 (2d Cir.1986).......................................................18

*Fitzgerald v. CBS Broadcasting*,
491 F.Supp.2d 177, 189 (D. Mass. 2007) .............................................16

*Fonar Corp. v. Domenick*,
105 F.3d 99, 104 (2d Cir.), *cert. denied*, 522 U.S. 908 (1997)...........................21

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
139 S. Ct. 881, 203 L. Ed. 2d 147 (2019) ............................................21

*Goodman v. Univ. Beauty Prods. Inc.*, No. 17-CV-1716, 2018 WL 1274855, at *5
(S.D.N.Y. Mar. 9, 2018) .....................................................................22

*Harper & Row v. Nation Enterprises*,
471 U.S. 539, 557 (1985)............................................................... passim

*Hirsch v. CBS Broad. Inc.*, No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *6
(S.D.N.Y. Aug. 4, 2017) ......................................................................5

*Hirsch v. Complex Media, Inc.*, No. 18-cv-5488 (CM), 2018 WL 6985227, at *6
(S.D.N.Y., December 10, 2018)...........................................................8, 9

*Infinity Broadcast Corp. v. Kirkwood*,
150 F.3d 104, 108 & n. 2 (2d Cir. 1998) ...............................................11

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
413 F.3d 257 (2d Cir. 2005).................................................................21

iv

*Kelly-Brown v. Winfrey,*
  717 F.3d 295, 308 (2d Cir. 2013)........................................................................ 5

*Kleier Advert., Inc. v. Naegele Outdoor Advert., Inc.,*
  676 F. Supp. 140, 142 (W.D. Ky. 1987)............................................................ 19

*Konangataa v. Am. Broadcasting Companies, Inc.,*
  No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017)... 10

*LaChapelle v. Fenty,*
  812 F. Supp. 2d 434, 442 (S.D.N.Y. 2011) ......................................................... 5

*Lindsay v. Wrecked and Abandoned Vessel R.M.S. TITANIC,*
  52 U.S.P.Q.2d 1609, 1612 (S.D.N.Y.1999)...................................................... 20

*Lotes Co. v. Hon Hai Precision Indus. Co.,*
  753 F.3d 395, 403 (2d Cir. 2014)........................................................................ 4

*Malinowski v. Playboy Enterprises, Inc.,*
  706 F. Supp. 611, 615 (N.D. Ill. 1989) ............................................................. 20

*Masi v. Moguldom Media Grp. LLC,*
  No. 18-CV-2402, 2019 WL 3287819, at *4 (S.D.N.Y. July 22, 2019) .............. 22

*Monster Communications, Inc. v. Turner Broadcasting,*
  935 F.Supp. 490, 494 (S.D.N.Y. 1996). ............................................................ 14

*Murphy v. Millennium Radio Grp. LLC,*
  650 F.3d 295, 307 (3d Cir. 2011)........................................................................ 8

*Natkin v. Winfrey,*
  111 F. Supp. 2d 1003, 1008 (N.D. Ill. 2000) .................................................... 20

*Nunez v. Caribbean Int'l News Corp.,*
  235 F.3d 18, 25 (1st Cir. 2000)......................................................................... 10

*NXIVM Corp. v. Ross Inst.,*
  364 F.3d 471, 478 (2d Cir. 2004)........................................................................ 6

*Otto v. Hearst Commc'ns, Inc.,*
    345 F. Supp. 3d 412, 432–33 (S.D.N.Y. 2018) ........................................... passim

*Psihoyos v. National Examiner*,
    No. 97-cv-7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ............. 8

*Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*,
    10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) ........................................................... 13

*Ringgold v. Black Entertainment Television, Inc.*,
    126 3d 70, 79 (2d Cir. 1997) ..................................................................... 7, 15

*Ringgold*, 126 F.3d at 80-81 ................................................................................ 15

*Sands v. CBS Interactive Inc.,*
    No. 18-CV-7345 (JSR), 2019 WL 1447014, at *4 (S.D.N.Y. Mar. 13, 2019)
    .......................................................................................................... passim

*Scholz Design, Inc. v. Sard Custom Homes, LLC,*
    691 F.3d 182, 186 (2d Cir. 2012) ...................................................................... 21

*Schwartzwald v. Oath, Inc.,*
    No. 19-CV-9938 (RA), 2020 WL 5441291 (S.D.N.Y. Sept. 10, 2020) ............... 5

*Sony Corp. of America v. Universal City Studios, Inc.*,
    464 U.S. 417, 450 (1984) .................................................................................. 15

*Swatch Group Management Services Ltd. v. Bloomberg L.P.*,
    756 F.3d 73, 85 (2d Cir. 2014) ...................................................................... 5, 8

*United States v. Gallant*, 570 F. Supp. 303, 307 (S.D.N.Y. 1983), *abrogated*
    *by Dowling v. United States*,
    473 U.S. 207, 105 S. Ct. 3127, 87 L. Ed. 2d 152 (1985)..................................... 19

*Walsh v. Townsquare Media, Inc.*,
    No. 19-CV-4958 (VSB), 2020 WL 2837009 (S.D.N.Y. June 1, 2020)................ 5

*Whimsicality, Inc. v. Rubie's Costume Co. Inc.*,
    891 F.2d 452, 455 (2d Cir. 1989)...................................................................... 21

*Yang v. Mic Network, Inc.,*
  405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019) ........................................................... 5


## STATUTES

17 U.S.C. § 107 ....................................................................................................... 6

17 U.S.C. § 201(a) ................................................................................................. 20

17 U.S.C. § 410(c) ................................................................................................. 21

## PRELIMINARY STATEMENT

**"It is true that news reporting is a widely-recognized ground for finding fair use under the Copyright Act. The Court has found no case, however, in which the use of an image solely to present the content of that image, in a commercial capacity, was found to be fair."** - *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F.Supp.3d 395, 407 (S.D.N.Y. 2016)

This is a copyright infringement action involving unauthorized use of copyrighted photograph of Joaquin Phoenix on the movie set of the *Joker* (the "Photograph").

Plaintiff Steve Sands ("Plaintiff" or "Sands") is a professional photographer. Defendant What's Trending, Inc. ("Defendant" or "What's Trending") is a for-profit publisher of entertainment-related news. Defendant has interposed the defense of fair use under 17 U.S.C. §107 and asks the Court to decide this affirmative defense as a matter of law on the face of the pleadings.

The fair use defense is objectively unreasonable given that there is no transformative effect when a secondary user republishes the Photograph to illustrate a news story about the subject matter depicted in the Photograph. Defendant's use also usurped a fully functioning licensing market for the work as Plaintiff made the Photograph available for licensing to commercial outlets. Indeed, Defendant used the Photograph for the exact same purpose that Plaintiff intended it be use: to show what Joaquin Phoenix looks like on set of the then-upcoming movie the *Joker*.

Federal courts should not permit commercial news organizations to shoplift photographs in order to comment on the attributes of the subject matter depicted in such images. Because Defendant did nothing more than use a Photograph of the Joker to illustrate a news article about the Joker, there can be no transformative effect as a matter of law.

The Court should therefore decline to follow the holdings in *Yang v. Mic Network, Inc.* and *Walsh v. Townsquare Media, Inc.* which are factually inapposite. Instead, the Court should adopt the holding in *Sands v. CBS Interactive Inc.,* No. 18-CV-7345 (JSR), 2019 WL 1447014, at *4 (S.D.N.Y. Mar. 13, 2019) which is directly on point. There, the same plaintiff sued CBSi for using photographs he took of actors on set for Marvel's *Punisher* series on Netflix. CBSi used the celebrity photographs on its www.gamestop.com website to promote the release of the upcoming *Punisher* television series, much like Defendant here used the Photograph to promote the upcoming release of the *Joker*. The Court determined that "CBSi's use of Sands's photographs was in no way transformative." *Id.*

If Defendant's practice of shoplifting photographs from the internet were permitted, it would photographers of their licensing income and would allow every other publisher to free-ride off the labor of that author's copyright. News organizations would also be less likely to bear the expense of dispatching its own photojournalists to cover newsworthy events or ideas, thereby frustrating the Copyright Act's purpose of maximizing the quantity and quality of works available to the public. As such, the fair use defense should be dismissed as matter law.

## STATEMENT OF FACTS

### Plaintiff Steve Sands

Sands is a professional photographer in the business licensing his photographs to online and print media for a fee. [Amended Complaint ("Am. Compl.") ¶ 5]

### Defendant What's Trending, Inc.

Defendant is a for-profit media company engaged in the publishing industry and covers entertainment-related news, including news about celebrities and Hollywood motion pictures.

2

[Am Compl. ¶¶ 9-10]  Defendant owns and operates a website at the URL

www.WhatsTrending.com. [Am Compl. ¶ 8]

**The Photograph of Joaquin Phoenix**

Sands photographed actor Joaquin Phoenix as the Joker (the "Photograph"). [Am Compl. ¶ 11, Ex. A]  In creating the Photograph, Sands exercised personal choices in the selection of the subject matter, perspective, angle, lighting, timing, camera equipment, lens and filters. [Am Compl. ¶ 13]  Sands then made the Photograph available for licensing to commercial news outlets. [Am Compl. ¶ 14]

The Photograph depicts actor Joaquin Phoenix live on set of the movie the "Joker". [Am Compl. ¶ 14, Ex. A]  Sands took the Photograph for the purpose of licensing to media outlets in anticipation of the release of the movie the "Joker." [Am Compl. ¶ 16]  An actual market existed for the Photograph at the time of the alleged infringement given that Sands had made the Photograph available for licensing and there was market demand for photographs of Joaquin Phoenix as the Joker, given the widespread publicity surrounding the "Joker" motion picture. [Am Compl. ¶ 17]

**Defendant's Unauthorized Re-Publication of the Photograph**

On September 17, 2018, What's Trending ran an article on the Website *First Pics of Joaquin Phoenix As The JOKER Released*. See: https://whatstrending.com/pop/photos-first-pis-of-joaquin-phoenix-as-the-joker-released/. (the "Infringing Article"). The Infringing Article prominently featured the Photograph. [Am Compl. ¶ 19, Ex. C]  Defendant did not license the Photograph from Plaintiff for its article, nor did Defendant have Plaintiff's permission or consent to publish the Photograph on its Website. [Am Compl. ¶ 19, Ex. C]

Defendant used the Photograph to show Joaquin Phoenix live on set of the movie the

"Joker". [Am Compl. ¶ 21]  Defendant's Infringing Article did not offer any commentary directed to the merits of the Photograph, nor report on any controversy surrounding the existence of the Photograph; but instead used the Photograph to illustrate its news article about the then-upcoming release of the "Joker" motion picture. [Am Compl. ¶ 21]

This marks the second time that Defendant has been sued for copyright infringement in this District. *See McKnight v. What's Trending, Inc.*, Case No: 1:17-cv-08598-PGG (S.D.N.Y. 2017).

**Copyright Registration of the Photograph**

Sands is the author of the Photograph and has at all times been the sole owner of all right, title and interest in and to the Photograph, including the copyright thereto. [Am Compl. ¶ 12]  The Photograph was registered with United States Copyright Office and was given Copyright Registration Number VA 2-121-941, with effective date of October 4, 2018 (the "941 Registration").  [Am Compl. ¶ 18, Ex. B]

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). "[T]he

4

complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted).

"The determination of fair use is a mixed question of fact and law." *Swatch Grp. Mgmt. Servs. Ltd. V. Bloomberg L.P.,* 756 F.3d 73, 81 (2d Cir. 2014).  It is an "open-ended and context-sensitive inquiry" that is "fact-driven[ ]" *LaChapelle v. Fenty,* 812 F. Supp. 2d 434, 442 (S.D.N.Y. 2011); *see also Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 577 (1994) ("the [fair use] statute, like the doctrine it recognizes, calls for case-by-case analysis").

In rebutting a defendant's fair use argument on a Rule 12(b)(6) motion, a plaintiff is "held only to the usual burden of a motion to dismiss . . . which is to say [he] must plead sufficient facts to plausibly suggest that they are entitled to relief." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).  "Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss." *Id.*; *see A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 210 (S.D.N.Y. Sept. 18, 2015); *see also Hirsch v. CBS Broad. Inc*., No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *6 (S.D.N.Y. Aug. 4, 2017) (denying motion to dismiss on the issue of fair use as premature).[1]

---

[1] Recently, several courts in this District have granted motions to dismiss based on fair use.  *See, e,.g., Schwartzwald v. Oath, Inc.,* No. 19-CV-9938 (RA), 2020 WL 5441291 (S.D.N.Y. Sept. 10, 2020); *Walsh v*.

*Schwartzwald v. Oath, Inc.,* No. 19-CV-9938 (RA), 2020 WL 5441291 (S.D.N.Y. Sept. 10, 2020); *Walsh v*. *Townsquare Media, Inc*., No. 19-CV-4958 (VSB), 2020 WL 2837009 (S.D.N.Y. June 1, 2020); *Yang v. Mic Network, Inc.,* 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019).  Motions for reconsideration remain pending in *Walsh* and *Yang*.

## ARGUMENT

## POINT I:      THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW

A court "may conclude as a matter of law that the challenged use does not qualify as a fair use of the copyrighted work."  *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 560 (1985).  Section 107 of the Copyright Act sets out four factors to consider in determining whether a defendant's use of a copyrighted work is a fair use. These are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. As set forth below, examination of the statutory factors demonstrates that Defendant's secondary use of the Photographs does not constitute fair use.

## A.      THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE

The first factor under 17 U.S.C. § 107(1), which addresses the manner in which the copied work is used, is the "heart of the fair use inquiry."  *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  Courts within the Second Circuit examine at least two sub-factors to determine the purpose and character of use, including whether the secondary use is (1) transformative; and (2) for commercial purposes.  *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004).

## (1)      Defendant's Secondary Use is NOT Transformative

The fair use doctrine "allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts."  *See Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  The central purpose of the inquiry is to

determine whether "the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Ringgold v. Black Entertainment Television, Inc.*, 126 3d 70, 79 (2d Cir. 1997) (citations omitted).

As demonstrated below, Defendant's use was not transformative because Defendant did not report on any controversy that arose because of the very existence of the Photograph itself. Nor did Defendant transform the original purpose of the Photograph. Defendant merely used the Photograph to show what it depicts: Joaquin Phoenix on set of the Joker.

Defendant admits that the text accompanying its news article commented on the Joker character and the then upcoming Joker movie. [Dkt. #21, p. 11 of 14] ("Defendant published the Photo with commentary both on the photograph's contents – describing the character as "a slimy, slithery, skinny long haired creep," and the likely contents of the upcoming Joker movie, based on plot lines from various comic book sources.") Defendant further admits that used the Photograph to "illustrate" a news article "about the movie" (rather than about the Photograph) [Dkt. #21, p. 12 of 14]

In other words, Defendant admits that it used the Photograph to display the content of the image, which is precisely the type of use that must be licensed under 17 U.S.C. §106(5). Because Defendant did nothing more than comment on the subject matter depicted in the image and the then upcoming release of the Joker movie, there can be no transformative effect.

Moreover, Defendant reaped the financial benefits of exploiting Plaintiff's pictorial work *prominently* on its commercial website (advertisements and all) without securing permission. Use of photographs as "click bait" to sell advertising space should not be grounds for fair use, regardless of the minimal textual commentary provided by the Defendant.

7

### *(a)  The Newsworthiness of the Photograph is Not Dispositive*

Defendant argues that its use of the Photograph is fair because it was contained within a news report. The preamble to the fair use statute does list "news reporting" as an illustrative basis supporting fair use under this factor.  17 U.S.C. § 107.  However, as per the Supreme Court, "[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report' of the [work]."  *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 557 (1985).[2]

In *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017), the court explained that the preferential treatment accorded to "news reporting" under the preamble to Section 107 only applies to news reporting of the copyrighted work itself; not news reporting about the subject matter depicted in the image. *Barcroft,* 2017 WL 5032993 at *6 ("CMG is correct in noting that the preamble of Section 107 carves out categories of reproduction that are likely to constitute fair use, but it is incorrect in asserting that its use of the Images fell within one of those categories. Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about that work*.") (italics added).[3]

### *(b)       Defendant Used the Photo to Show What it Depicts: the Joker*

---

[2]  *See also Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014) ("A news organization thus may not freely copy creative expression solely because the expression itself is newsworthy."); *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307 (3d Cir. 2011) ("News organizations are not free to use any and all copyrighted works without the permission of the creator simply because they wish to report on the same events a work depicts."); *Psihoyos v. National Examiner*, No. 97-cv-7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ("The mere fact the photo depicts a newsworthy item does not justify commercial exploitation of it.").

[3]  *Accord Gossip Cop*, 196 F. Supp. 3d at 406 n.6 ("Defendant confuses the situation in which the photograph is the story . . . and the scenario present here, in which the contents of the photograph are of some public interest . . . ); *Hirsch v. Complex Media, Inc.*, No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) ("Complex has not established that its Video did anything more than merely describe the subject of Hirsch's Photograph, newsworthy or not. That conduct alone does not suffice as transformative.").

No transformation exists where the image is merely used "as [an] illustrative aid[]" to depict the subject matter described in the news article.  *See, e.g.*, *Barcroft,* 2017 WL 5032993, at *6 ("CMG's articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles. <u>CMG's argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law</u>.") (underline added). *Accord Hirsch v. Complex Media, Inc.*, No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) ("Complex has not established that its Video did anything more than merely describe the subject of Hirsch's Photograph, newsworthy or not. That conduct alone does not suffice as transformative."); *Psihoyos*, 1998 WL 336655, *3 (defendant's "use is not transformative, because its piece uses the photo to show what it depicts."); *Otto*, 2018 WL 6510801, *8 ("the use of an image solely to illustrate the content of that image, in a commercial capacity, has yet to be found as fair use in this District."); *Gossip Cop*, 196 F.Supp. at 404-405 (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple…"); *Sands,* 2019 WL 1447014, at *4 (rejecting fair use argument where defendant published photographs of celebrity actors to promote the upcoming release of the Netflix series in which the actors were set to appear).

Here, like the cases in *Sands, Otto*, *Hirsch*, *Barcroft*, *Gossip Cop* and *Psihoyos* where fair use was rejected, Defendant used the Photograph to merely illustrate a story about the subject matter depicted in the image: Joaquin Phoenix as the *Joker*. Defendant should not be shielded from liability on account of Defendant's purported commentary directed at the *Joker* movie, or the underlying *Joker* character.

On its face, Defendant's Infringing Article does nothing more than describe the subject matter depicted in the Photograph as a means to promote the upcoming movie the *Joker*.[4]  If Defendant needed a visual illustration to comment on the *Joker* movie release, then Defendant could have either commissioned its own photographer to capture Joaquin Phoenix on the movie set – or get a license to republish Plaintiff's pre-existing image of Joaquin Phoenix as the *Joker.*

### (c) *Defendant Did Not Report on Any Controversy Surrounding the Existence the Photograph Itself*

In the context of news reporting, a photograph may be transformed where "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context."  *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993, *6 (S.D.N.Y. Nov. 2, 2017).  Thus, "a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph."  *Id.* (*citing Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photographs of Miss Puerto Rico Universe were published by newspaper to comment on the political controversy surrounding the existence of the photographs and their impact on the beauty queen's qualifications to retain the crown); *Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) (fair use found where publishers reported on social controversy surrounding a father's lack of discretion in posting a live-streaming video that graphically depicted the birth of his child)).[5]

---

[4] Unlike the cases in *Nunez* and *Konangataa,* where the publishers reported on a public controversy sparked by the very existence of the images, Defendant here failed to offer any commentary or criticism directed at the copyrighted work at issue.  At bottom, Defendant's Infringing Article merely reports on what the Photograph depicts.  Accordingly, there can be no transformative effect as a matter of law.

[5] The reason why *Nunez* and *Konangataa* constitute fair use is because the media publisher in each case reported on a political or social controversy that arose because of the copyrighted photograph.  *Accord Otto*, 345 F.Supp.3d at 428.

Here, despite Defendant's strained arguments to the contrary, it is not the very existence of the Photograph that was controversial; it was the then-upcoming *Joker* movie, and Joaquin Phoenix as the lead actor, which became a matter of public interest.  By Defendant's own admission, its Infringing Article targets the motion picture and the actor Phoenix, rather than the merits of Plaintiff's pictorial rendition of Phoenix as the Joker.  Defendant is free to offer its opinion as to the qualitative value of Joker as depicted in Plaintiff's Photograph, but it must secure a license from the rights holder to display such Photograph on its commercial website.

### (d)    Defendant Has <u>Not</u> Transformed the Original Intended Use of the Photograph

"[U]se of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative."  *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998) (citation omitted)).  A secondary use has "no transformative effect [where the article] display[s] the Images in the same manner and for the same purpose as they were originally intended to be used."  *Barcroft Media,* 2017 WL 5032993, at *6; *see also Psihoyos,* 1998 WL 336655 at *3 (rejecting fair use defense where purpose of secondary use was to display it "for precisely a central purpose for which it was created").

Here, Sands is a professional photographer who took the Photograph for the purpose of licensing to media outlets in anticipation of the release of the movie the "Joker." [Am Compl. ¶ 16]  There can be on dispute that Defendant re-published the Photograph on its Website for the identical purpose of using the Photograph to illustrate its news article about the then-upcoming release of the "Joker" motion picture. [Am Compl. ¶ 21]

### (e)     The Cases of *Walsh* and *Yang* are Inapposite; *Sands v. CBS* is Analogous

Defendant's transformative argument largely rests on the cases in *Yang v. Mic Network, 405 F.Supp.3d 537 (S.D.N.Y. 2019)* and *Walsh v. Townsquare Media*, 2020 WL 2837009 (S.D.N.Y. June 1, 2020).[6]  In each case, the courts found a transformative effect where the defendant took screenshots of third-party uses of the respective photographs, accompanied by some textual commentary.  The media defendants in both *Yang* and *Walsh* were shielded from liability because they took screenshots of a pre-existing news article which became controversial (in *Yang*) or a pre-existing Instagram post by the celebrity herself (in *Walsh*) and then pasted them into their commercial websites.

Here, in contrast, Defendant did not offer any commentary on the use of the Photograph by third parties, nor did it provide any context to the Photograph which wasn't already obvious by just looking at the Photograph itself. Instead, Defendant was seeking to exploit the Photograph as "the first" to show Phoenix as the *Joker*. It did so, by its own admission, to provide "commentary . . . of the upcoming movie" [Dkt. #21, p. 4 of 14]  In short, Defendant used the Photograph of the Joker to illustrate an article about the *Joker*.  As a matter of law, such use is not transformative.

Further, the Court here should decline to follow the *Yang / Walsh* approach because it should not be so convenient for media companies to avoid getting a license from the copyright holder simply by creating a composite screenshot of a pre-existing news article or social media post.

Instead, the Court should adopt the holding in *Sands v. CBS Interactive Inc.,* 2019 WL 1447014, at *4 (S.D.N.Y. Mar. 13, 2019) which is directly on point. There, the same plaintiff sued CBSi for using photographs he took of actors on set for Marvel's *Punisher* series on

---

[6] Motions for reconsideration are currently pending in both matters.

Netflix.  CBSi used the celebrity photographs on its www.gamestop.com website to promote the release of the upcoming *Punisher* television series, much like Defendant here used the Photograph to promote the upcoming release of the *Joker*.  The Court determined that "CBSi's use of Sands's photographs was in no way transformative." *Id.*

**(2)      Defendant's Use is Commercial Rather Than Non-Profit**

The fact that Defendant used the Photograph for a commercial rather than a non- profit purpose also weighs against a finding of fair use.  *Psihoyos*, 1198 WL 336655, at *3 (*citing Campbell*, 510 U.S. at 583-84).  The "crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price."  *Harper & Row*, 471 U.S. at 562.

Here, there can be no dispute that Defendant is a for-profit publisher which disseminates entertainment-related news content on its website.  [Am Compl. ¶¶ 9-10] Commercial advertisements appeared alongside the Photograph in the Infringing Article, thereby evincing Defendant's intent to exploit Plaintiff's work.  *See, e.g., Hirsch v. Complex* at *6 (an inference of commercial use may be drawn where copyrighted work was displayed adjacent to advertisements); *Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*, 10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) (finding that commercial advertisements appearing alongside the unauthorized use of photographs demonstrated a defendant's commercial purpose).

**B.      THE SECOND FACTOR WEIGHS AGAINST FAIR USE**

The second factor examines the "nature of the copyrighted work." 17 U.S.C. § 107(2). Courts consider "(1) whether the work if expressive or creative, with a greater leeway being allowed a claim of fair use where the work is factual or information, and (2) whether the work if published or unpublished."  *Blanch*, 467 F.3d at 256.  "Photographic images of actual people,

places and events may be as creative and deserving of protection as purely fanciful creations."

*Monster Communications, Inc. v. Turner Broadcasting*, 935 F.Supp. 490, 494 (S.D.N.Y. 1996).

Here, the Photograph is creative in nature as it is the product of a professional

photographer. Moreover, in creating the Photograph, Plaintiff exercised a personal and creative

choice in the selection of camera equipment, wide angle lens, perspective, angle, lighting and

exposure.  [Am Compl. ¶ 13]  Plaintiff's original take on the subject matter renders the image

"as creative and deserving of protection as purely fanciful creations." *Monster Comm.*, 935

F.Supp. at 494.

### C.    THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT PUBLISHED A FULL-COLOR, FULL-SCALE REPRODUCTION OF THE IMAGE WITHOUT ALTERATION

The third factor bearing on fair use is "the amount and substantiality of the portion used

in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  The question is whether

"the quantity and value of the materials used are reasonable in relation to the purpose of the

copying."  *Campbell*, 510 U.S. at 586.  The Court should consider whether the portion taken is

"essentially the heart" of the copyrighted expression.  *NXIVM Corp.*, 364 F.3d at 480 (citation

omitted).  The "most relevant" question for this factor is whether the infringer has taken "no

more" than is necessary.  *Infinity Broadcast Corp.*, 150 F.3d at 110.  "[T]he more of a

copyrighted work that is taken, the less likely the use is to be fair."  *Id.* at 109.

As a quantitative matter, Defendant has taken the Photograph in full-scale and full color.

This fact alone weighs against fair use.  *See Associated Press*, 931 F.Supp.2d at 558

("appropriation of a copyrighted work in its entirety weighs against a finding of fair use").  As

a qualitative matter, Defendant has used more of the copyrighted work than was necessary to

accomplish its purpose of news reporting.  *See Rogers*, 960 F.2d at 311.

14

Defendant's wholesale reproduction of the Photograph, without only minor alteration, demonstrates the work's qualitative value. *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.").

Moreover, Defendant's copying of the Photograph was unnecessary to achieve Defendant's news reporting purpose. There were several legal alternatives available to Defendant: (1) Defendant could have commissioned its own photographer to photograph Phoenix on the set of the Joker movie; (2) Defenant could have published its news story without any photograph whatsoever; or (3) Defendant could have obtained a license directly from Plaintiff before publishing its story. By opting to expropriate the Photograph, Defendant has taken more than what was "necessary" to effectuate its news reporting purpose.

**D.    THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET**

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Ringgold*, 126 F.3d at 80-81 (*citing Campbell*, 510 U.S. at 590 (quotation omitted)).

As a threshold matter, the Court may presume market harm because Defendant's secondary use constituted a mere duplication of Plaintiff's original photograph. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that "every commercial use of copyrighted material is presumptively an unfair exploitation of the

monopoly privilege that belongs to the owner of the copyright").  "A presumption of market

harm "makes common sense[ ] when a commercial use amounts to mere duplication of the

entirety of an original." *Campbell*, 510 U.S. at 591.[7]

     Defendant's secondary use impairs the actual market for the Photograph because there

was a fully functioning market demand for Plaintiff's work.  [Am Compl. ¶ 17]  *See*

*Associated Pres*s, 931 F.Supp.2d at 559 ("Where there is a fully functioning market for the

infringer's use of the copyrighted material, it will be difficult for the infringing party to show

that it made fair use without paying a licensing fee") (*citing Harper & Row*, 471 U.S. at 566 n.

9).

     Defendant's unauthorized use clearly supplanted the market in which Plaintiff had a

reasonable expectation to earn licensing revenue.  *See, e.g., Fitzgerald v. CBS Broadcasting*, 491

F.Supp.2d 177, 189 (D. Mass. 2007); *Otto*, 345 F. Supp. 3d at 432.  As per *Fitzgerald v. CBS*

*Broad., Inc*.,

> CBS's use of the photographs is paradigmatic of the only market the photographs could
> reasonably have: licensing to media outfits . . . The market for media licenses for these
> photographs clearly exists, and is the only market in which the photographs have seen use:
> Various media outfits have used the photographs more than 20 times, resulting in over $60,000 in
> fees and settlements for exactly this kind of use . . . If the Court finds that CBS's use was fair use,
> then all of these media uses—and uses like them in the future—would also be fair use, destroying
> the only potential market that exists for the photographs. It is hard to imagine that freelance
> photojournalists would continue to seek out and capture difficult to achieve pictures if they could
> not expect to collect any licensing fees. This is exactly the kind of situation that copyright is
> meant to impact—where unrestricted use would likely dry up the source."

    491 F. Supp. 2d 177, 189 (D. Mass. 2007); *accord Michael Grecco Prods*., 345 F. Supp.

at 508–09 ("Because the images are substantially identical, publication by Defendants affect

the market for the work—more supply, less demand. The publication can reasonably

---

[7] Further, under *Sony,* "there is a presumption of market harm [where] Defendant's use of [] photographs were not
transformative."  *Ferdman v. CBS Interactive, Inc.*, 17-cv-1317 (PGG), 2018 WL 4572241, *19 (S.D.N.Y. Sept. 21,
2018).  Here, because Defendant's use constituted a mere duplication of Plaintiff's Photograph and was
untransformative, *Sony's* presumption of market harm applies.

be expected to harm Plaintiff's ability to license the work for publication and use in derivative works.")

> Indeed, as Judge Woods noted in *Otto v. Hearst Communications, Inc:*
>
> Publishing the Photograph without permission essentially destroys the primary market for its use. As the owner of the work, Otto had the right to try to sell the Photograph to media outlets, if he decided to do so. The fact that the Photograph was reported on so widely indicates that there was indeed a market for it. Hearst has done nothing to show that the general audience for Otto's photograph would not be equally satisfied with its version. Thus, the publication can reasonably be expected to harm Plaintiff's ability to license the work for publication and use in derivative works. Because the images are nearly identical, Defendant's unauthorized publication impacts the market for the work—simply put, more supply, less demand.
>
> *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 432–33 (S.D.N.Y. 2018).

Defendant's secondary use also impairs the potential market for the Photograph because "unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in the substantially adverse impact on the potential market for [licensing of] the original." *Campbell*, 510 U.S. at 590 (internal quotation omitted). "Under section 107, 'potential market' means either an immediate or a delayed market, and includes harm to derivative works." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir.1990)

Under prevailing Second Circuit law, Plaintiff is entitled to collect licensing fees in whatever reasonably expected potential markets may exist. *See Michael Grecco Prods.*, 345 F. Supp. 3d at 508–09 ("the inquiry [of the fourth factor] looks to whether infringement will affect the *potential* market for the copyrighted work in "traditional, reasonable, or *likely to be developed* markets." (citing *Bill Graham Archives*, 448 F.3d at 614 (emphasis added).

Here, Defendant's publication of Plaintiff's Photograph of Phoenix on set of the *Joker* is precisely the market that Plaintiff expected to garner licensing fees. Defendant cannot just free-ride on a protected work and deprive Plaintiff of the fruits of his labor, merely because the *Joker* movie captured the public interest. Indeed, the more market demand that exists for a

copyrighted work, the greater the need for commercial media outlets to abide by federal law
and obtain a license.

In sum, all four factors weigh heavily against Defendant and the affirmative defense of
fair use should be dismissed as a matter of law.

**POINT II:     COPYRIGHT INFRINGEMENT IS A STRICT LIABILITY OFFENSE**

Defendant next argues that the "photo appears in many places on the internet" and that
"there is no indication of any copyright protection on the published photograph." [Dkt. #21, p. 7
of 14]  It is unclear how this argument absolves Defendant of liability for copyright infringement
given that: (i) Plaintiff does not have to show bad faith intent to prevail on an infringement
claim, which is regarded as a strict liability offense; (ii) the Copyright Act places publishers on
notice not to steal photographs which don't belong to the copyright owner; and (iii) copyright
notices "©" are not required to be published in connection with a work published after 1989.

First, Defendant asks the Court to dismiss the case on grounds that it harbored a non-
culpable state-of-mind when it expropriated the Photograph from the internet. Defendant's state-
of-mind may be relevant to damages in a case involving statutory damages, but it is not relevant
to Defendant's liability for copyright infringement. *See, e.g., EMI Christian Music Group, Inc. v.
MP3tunes, LLC,* 844 F.3d 79, 89 (2d Cir. 2016) ("[c]opyright infringement is a strict liability
offense in the sense that a plaintiff is not required to prove unlawful intent or culpability.");
*Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.,* 807 F.2d 1110, 1113 (2d Cir.1986) ("intent or
knowledge is not an element of infringement.").

Second, Defendant argues that "[t]here was no way for Defendant to know that the Photo
was subject to copyright protection." [Dkt. # 21, p. 7 of 14]  This statement is false, and shows
bad faith given that Defendant operates in the publishing industry.  The Copyright Act places

Defendant on notice that unauthorized use of works constitutes a violation of federal law. 17

U.S.C. 101 *et seq.*, even if those works are unregistered. *See Kleier Advert., Inc. v. Naegele*

*Outdoor Advert., Inc.*, 676 F. Supp. 140, 142 (W.D. Ky. 1987) ("17 U.S.C. Sec. 408 clearly

provides that registration is not required in order for a copyright to have validity").  Indeed, the

law which holds that a photographer is the owner of the copyright has been well-settled since the

nineteenth century.  *Falk v. Brett Lithographing Co.*, 48 F. 678, 679 (C.C.S.D.N.Y. 1891) ("That

a photograph may be the subject of a valid copyright for the photographer as the author of it is

well shown and seems to be settled in *Lithographic Co. v. Sarony*, 111 U.S. 53, 4 Sup.Ct.Rep.

279).

    As a for-profit enterprise engaged in the business of publishing copyrighted materials, it

is Defendant's obligation to conduct due diligence and ascertain the identity of the copyright

holder. *United States v. Gallant*, 570 F. Supp. 303, 307 (S.D.N.Y. 1983), *abrogated by Dowling*

*v. United States*, 473 U.S. 207, 105 S. Ct. 3127, 87 L. Ed. 2d 152 (1985) ("[defendant] was

under a duty to obtain a consensual license from the copyright holders to distribute records of

their copyrighted compositions.").

    If Defendant is unable to identify the rights holder, then it is Defendant's obligation not

to use the image on its commercial website if Defendant: (a) does not own the copyright; (b)

does not have a license from the copyright holder.[8]  When Defendant used the Photograph on its

commercial site knowing that it did not own the copyright, and also knowing that it did not have

a license, it assumed the risk of being sued for copyright infringement.

    Third, Defendant argues that it could not "determine who the copyright holder was in

order to contact him and obtain a license" [Dkt. # 21, p. 7 of 14]  Under the Copyright Act,

---

[8] Furthermore, the evidence attached to the Bowles declaration is outside the four corners of the pleadings and therefore not admissible on this motion without converting it to one for summary judgment under Fed.R.Civ.P. 56(d).

copyright notice is no longer a prerequisite to copyright protection for works created after March 1, 1989. *Norma Ribbon & Trimming, Inc. v. Little,* 51 F.3d 45 (5th Cir.1995).

Moreover, Defendant, as a sophisticated purveyor of copyright materials, should know that ownership of a copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a).  "Under normal circumstances, a photographer is the author of his or her photographs." *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1008 (N.D. Ill. 2000) (citing *Burrow-Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 60 (1884);  *Lindsay v. Wrecked and Abandoned Vessel R.M.S. TITANIC,* 52 U.S.P.Q.2d 1609, 1612 (S.D.N.Y.1999)); *see also Malinowski v. Playboy Enterprises, Inc.*, 706 F. Supp. 611, 615 (N.D. Ill. 1989) ("For photographs the photographer is the creator of the work.") (citing *Burrow–Giles Lithographic Co.,* 111 U.S. at 57–61).

Here, Defendant plainly knew that Defendant was not the owner of the Photograph. Moreover, there are questions of material fact regarding what steps Defendant actually took to ascertain Plaintiff's identity. But regardless, even if Defendant made an effort to identify the copyright holder, its ultimate failure to obtain a license from the copyright holder is grounds for a determination of infringement.

**POINT III:    CONGRESS PLACES THE EVIDENTIARY BURDEN ON DEFENDANT TO SEEK DEPOSIT COPIES FROM THE U.S. COPYRIGHT OFFICE**

Defendant argues, somewhat in passing, that the "complaint should be viewed with caution" because "it is impossible to discern from the registration whether the photograph that appears at Exhibit A is actually registered within this collection." [Dkt. #21, p. 8 of 14]  Of course, this is true of every copyright registration certificate issued by the Copyright Office: there are no graphic representations of the images themselves on the registration certificates.

To have standing to sue for copyright infringement, the Copyright Act requires that plaintiff has possession of a copyright registration certificate. 17 U.S.C. § 411(a); *accord Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 203 L. Ed. 2d 147 (2019) (holding a copyright claimant may commence an infringement suit when the Copyright Office registers a copyright). "A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the certificate holder's copyright ownership, as well as of the truth of the facts stated in the registration." *BWP Media USA*,196 F.Supp.3d at 401 (*citing* 17 U.S.C. § 410(c)). A certificate of copyright registration is *prima facie* evidence of both valid ownership of copyright <u>and</u> originality. *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).

To be timely, a certificate of registration must be obtained "before or within five years after first publication" of a work. *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005). Thus, "[p]ossession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable." *Whimsicality, Inc. v. Rubie's Costume Co. Inc.*, 891 F.2d 452, 455 (2d Cir. 1989). A party's "proffer of its certificate of copyright registration thus shifts to [the opposing party] the burden of proving the invalidity of the copyright." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir.), *cert. denied*, 522 U.S. 908 (1997).

Here, the 941 Registration was obtained on October 4, 2018 within five years after first publication of the Photograph. Accordingly, the 941 Registration serves as *prima facie* evidence of Plaintiff's valid copyright ownership and creates a rebuttable presumption that the work in question is copyrightable. *Whimsicality, Inc.*, 891 F.2d at 455. "The validity of a registration may be rebutted by proof of a certificate holder's fraud on the Copyright Office, though the party

seeking to establish such fraud bears a 'heavy burden.'" *BWP Media*, 196 F.Supp.3d at 401

(*citation omitted); see also Fonar Corp.*, 105 F.3d at 105 ("the presumption [of validity] may be

overcome only by 'proof of deliberate misrepresentation.'").

      Under the Copyright Act, the burden rests on defendant (not plaintiff) to seek official

deposit copies from the Copyright Office because a valid copyright registration is accorded the

presumption of validity if obtained within five years of initial publication. See 17 U.S.C. §410.

Further, multiple courts in this District have held that deposit copies are not necessary to sustain

plaintiff's evidentiary burden of copyright validity on summary judgment. *See Masi v.*

*Moguldom Media Grp. LLC*, No. 18-CV-2402, 2019 WL 3287819, at *4 (S.D.N.Y. July 22,

2019); *Chicoineau v. Bonnier Corp.*, No. 18-CV-3264, 2018 WL 6039387, at *2 (S.D.N.Y. Oct.

16, 2018); *Goodman v. Univ. Beauty Prods. Inc.*, No. 17-CV-1716, 2018 WL 1274855, at *5

(S.D.N.Y. Mar. 9, 2018).

      *In Goodman*, 2018 WL 1274855, at *5, Judge Forrest granted summary judgment in

plaintiff-photographer's favor, finding that Mr. Liebowitz's sworn declaration was sufficient to

show that the photograph was on deposit with the applicable registration certificate.  The court in

*Goodman* also stated that it was the defendant's obligation to contact the Copyright Office

during discovery and request information to be used to rebut the validity of copyright. *Id*. at 5

("defendants offer[ed] nothing more than speculative assertions to support this contention," and

that "[t]heir failure to submit any evidence ... prevent[ed] them from raising a triable issue on the

validity of the registration.").

      Similarly, in *Chicoineau*, 2018 WL 6039387, at *1, Judge Rakoff held that a copyright

registration certificate printed from the Copyright Office website, along with an affidavit from

plaintiff certifying that photograph was on deposit with the applicable registration, was sufficient

to establish a valid registration in the photograph and granting summary judgment in plaintiff's favor.

     In short, Defendant will have the opportunity to contact the Copyright Office in the event this case proceeds to discovery.

## **CONCLUSION**

     For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint should be DENIED.  If the motion is granted, then in the interest of justice, Plaintiff respectfully requests that the Court should grant Plaintiff leave to file a second amended pleading.

                          Respectfully Submitted,
                          LIEBOWITZ LAW FIRM, PLLC

                          by: **/richardliebowitz/**
                          Richard Liebowitz
                          11 Sunrise Plaza, Suite 305
                          Valley Stream, NY 11580
                          (516) 233-1660
                          rl@liebowtizlawfirm.com

                          *Counsel for Plaintiff*