UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
STEVE SANDS,

                        Plaintiff,

        -against-

WHAT'S TRENDING, INC.,

                       Defendant.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

20 Civ. 2735 (GBD) (KHP)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Steve Sands brings this action against Defendant What's Trending, Inc., asserting a claim of copyright infringement in violation of Section 501 of the Copyright Act, 17 U.S.C. § 101 et seq.[1] (Am. Compl., ECF No. 19.) At issue is a photograph Plaintiff took of actor Joaquin Phoenix while on set for the movie "Joker" (the "Photograph"). (*Id.* ¶¶ 11, 12, 21.) Plaintiff alleges that Defendant infringed upon his rights by publishing an article that "prominently featured the Photograph" without a license, permission, or consent from Plaintiff to do so. (*Id.* ¶¶ 1, 19, 20.) Defendant moves to dismiss Plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that there was no infringement of Plaintiff's copyright because the reproduction of the Photograph constitutes fair use. (Notice of Mot. to Dismiss Am. Compl., ECF No. 20.)

Before this Court is Magistrate Judge Katharine H. Parker's December 14, 2020 Report and Recommendation (the "Report"), recommending that Defendant's motion to dismiss be denied. (Report, ECF No. 33, at 1.) No objections have been filed. Having reviewed the Report for clear error and finding none, this Court ADOPTS the Report in full.

---

[1] Plaintiff filed an initial complaint on April 1, 2020. (Compl., ECF No. 1.) Defendant subsequently moved to dismiss Plaintiff's complaint. (Notice of Mot. to Dismiss, ECF No. 16.) Plaintiff, however, filed an amended complaint in response to Defendant's motion. (Am. Compl., ECF No. 19.) Accordingly, Defendant's first motion to dismiss is denied as moot.

1

## I. LEGAL STANDARDS

### A. Reports and Recommendations.

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). A magistrate judge's report to which no objections are made is reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). Clear error is present when, "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed,'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted), and "not merely if it 'would have decided the case differently,'" *Hernandez v. City of New York*, No. 11 Civ. 6644 (KPF) (DF), 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (quoting *Easley v. Cromartie,* 532 U.S. 234, 242 (2001)).

### B. Motion to Dismiss for Failure to State a Claim.

"A Rule 12(b)(6) motion challenges the legal sufficiency of the claims asserted in a complaint." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 119 (S.D.N.Y. 2015), *aff'd*, 843 F.3d 561 (2d Cir. 2016). In deciding a Rule 12(b)(6) motion, a court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)). A court is "not, however, 'bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman,* 517 F.3d 140, 149 (2d Cir. 2008)). In order to survive such a motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

2

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## II.   DEFENDANT'S MOTION TO DISMISS IS DENIED

The Copyright Act "grant[s] authors a limited monopoly over (and thus the opportunity to profit from) the dissemination of their original works of authorship." *Authors Guild, Inc. v. HathiTrust,* 755 F.3d 87, 95 (2d Cir. 2014). The doctrine of fair use establishes an "important limit[]" to this right by authorizing "the public to draw upon copyrighted materials without the permission of the copyright holder in certain circumstances." *Id.* Determining whether a reproduction constitutes fair use is "an open-ended and context-sensitive inquiry." *BWP Media USA, Inc. v. Gossip Cop Media, LLC,* 87 F. Supp. 3d 499, 504 (S.D.N.Y. 2015) (citing *Cariou v. Prince,* 714 F.3d 694, 705 (2d Cir. 2013)). However, courts must consider four nonexclusive factors in reaching such a determination:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107; *see also Cariou,* 714 F.3d at 705.

Fair use is an affirmative defense, which may be appropriately considered on a motion to dismiss "where the facts necessary to establish the defense are evident on the face of the complaint." *BWP Media USA, Inc.,* 87 F. Supp. 3d at 505 (quoting *Kelly–Brown v. Winfrey,* 717 F.3d 295, 308 (2d Cir. 2013)). In the case of fair use, such circumstances arise when "the only two pieces of evidence needed to decide the question of fair use are the original version and the allegedly infringing work." *Id.* (citation omitted); *see also Adjmi v. DLT Entm't Ltd.,* 97 F.Supp.3d 512, 527 (S.D.N.Y.2015) ("Courts in this Circuit have resolved motions to dismiss on fair use

grounds in this way: comparing the original work to an alleged parody, in light of applicable law."). Here, after a thorough review of both works in the context of all four factors, Magistrate Judge Parker appropriately found that dismissal was not warranted. (*See* Report at 4–16.)

### A. Purpose and Character of the Use.

With respect to the first factor, Magistrate Judge Parker correctly noted that the determination should be based on "whether the use at issue 'supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character.'" (Report at 5 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).) Courts often divide this factor into three sub-factors; specifically, whether the use is (1) transformative, (2) for commercial purposes, or (3) made in bad faith. *See, e.g., Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 531 (S.D.N.Y. 2018); *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477–79 (2d Cir. 2004). The first of these sub-factors—transformative use—is weighed most heavily. *See Campbell*, 510 U.S. at 579.

#### 1. Transformative Use.

Whether a use is transformative depends on whether it "adds value to the original." *Cariou*, 714 F.3d at 706 (quoting *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 142 (2d Cir. 1998)). That is, the "new work generally must alter the original with 'new expression, meaning, or message.'" *Id.* (quoting *Campbell*, 510 U.S. at 579). "[C]opying from an original for the purpose of criticism or commentary on the original or provision of information about it, tends most clearly to" qualify as transformative. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 215–16 (2d Cir. 2015). If the copyrighted work, however, is "merely used as an illustrative aid that depicts the subjects described in an article," the use is not transformative. *Yang v. Mic Network, Inc.*, 405

F. Supp. 3d 537, 543 (S.D.N.Y. 2019) (quoting *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017)) (internal quotation marks and brackets omitted).

Magistrate Judge Parker correctly found that Defendant's article did not offer a critique of the Photograph, nor "portray Phoenix or the film in a different light" than Plaintiff's original purpose. (Report at 7.) Magistrate Judge Parker reasonably inferred that the Photograph was intended to provide "potential viewers with a 'sneak peak' into Phoenix's character and/or the plot of the film." (*Id.*) Defendant's article "used the Photograph to do just that." (*Id.*; *see also id.* at 8 ("Indeed, the article itself states that 'the first photos released of the actor hint at just what this movie will be,' and that '[t]he most notable thing about the photos . . . is that Joaquin Phoenix has forgone the Joker make up in the shots these are from.'").) Based on these findings, Magistrate Judge Parker appropriately concluded that Defendant's reproduction of the Photograph "was not transformative of the original work." (*Id.* at 8.)

### 2. Commercial Use.

Magistrate Judge Parker also correctly determined that Plaintiff plausibly alleges that Defendant, a "for-profit entity," used the Photograph for commercial purposes, namely, "to provide topical content in order to attract readers." (Report at 9.)

### 3. Bad Faith Use.

Finally, Magistrate Judge Parker rightly concluded that Plaintiff does not plausibly allege bad faith by Defendant. (*Id.*) Plaintiff does allege that Defendant reproduced the photograph "without permission or consent," but Magistrate Judge Parker correctly found that "this alone is insufficient to constitute bad faith in this context as a matter of law." (*Id.* (citing *Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006)).)

\* \* \*

Two of the three sub-factors, including the heavily weighted "transformative use" sub-factor, do not support Defendant's fair use argument. Magistrate Judge Parker, therefore, appropriately found that the purpose and character of Defendant's use of the Photograph weighs against dismissal of Plaintiff's claims. (*Id.*)

### B. Nature of the Copyrighted Work.

Next, Magistrate Judge Parker correctly found that the second fair use factor "is neutral or weighs slightly against a finding of fair use." (Report at 11.) Magistrate Judge Parker identified and analyzed two sub-factors of the nature of the copyrighted work: (1) whether the work was "expressive or creative," and therefore less likely to be subject to fair use, and (2) whether the work was published. (Report at 9–10 (citing *Blanch*, 467 F.3d at 256).)

As to the first sub-factor, Plaintiff alleges that the Photograph was a creative work, citing "his selection of perspective, camera angle, lighting, timing, lens, and filters." (*Id.* at 10; Am. Compl. ¶ 13.) Magistrate Judge Parker credited Plaintiff's allegations and further found that "it could be reasonably inferred that the Photograph depicts Phoenix in his 'element' as an actor as opposed to capturing him on the street as he naturally appears." (Report at 10.)

Regarding the second sub-factor, the record purportedly reflects that the Photograph was published at some point in September 2018. (*See* Am. Compl. Ex. B. at 5–6.) Plaintiff alleges that Defendant infringed on his copyright on September 17, 2018. (Am. Compl. ¶ 19.) Consequently, Magistrate Judge Parker was unable to conclude whether the Photograph was published at the time of Defendant's alleged use. (Report at 11.)

### C. Amount and Substantiality of the Portion Used.

Magistrate Parker rightly determined that the third factor—the amount and substantiality of the portion used—"cuts against a finding of fair use." (Report at 13.) Generally, "the more of

a copyrighted work that is taken, the less likely the use is to be fair." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 89 (2d Cir. 2014) (quoting *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998)).

Defendant reproduced the Photograph in its entirety. (Report at 12.) To be sure, Plaintiff's copyright registration covers 672 photographs, only one of which was used in an allegedly infringing manner by the Defendant. (*See* Am. Compl. Exs. B, C.) Magistrate Judge Parker, however, found that "Defendant has provided no authority—and this Court is aware of none—to support Defendant's position that photographs copyrighted collectively as a group . . . constitute a single work for purposes of the fair use analysis." (Report at 12.) As Magistrate Judge Parker correctly noted, "[p]hotographs that are copyrighted as a group are not necessarily related to one another and, in any event, can be licensed to third parties on an individual basis." (*Id.* at 12.)

### D. Effect of the Use on the Value of the Copyrighted Work.

The fourth factor of the fair use inquiry—the effect of the use upon the potential market for or value of the copyrighted work— is "undoubtedly the single most important element" of the inquiry. *Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018) (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566 (1985)). The primary consideration of this element is "whether the copy brings to the marketplace a competing substitute for the original . . . so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 179 (2d Cir. 2018) (quoting *Authors Guild v. Google*, 804 F.3d at 223). A thorough analysis of this factor addresses both the "market harm caused by the particular actions of the alleged infringer" *and* the "market harm that would result from 'unrestricted and widespread conduct of the [same] sort.'" *Id.* (quoting *Campbell*, 510 U.S.

7

at 590) (alterations in original). The court may presume market harm "when a commercial use amounts to mere duplication of the entirety of an original." *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 609 (S.D.N.Y. 2020) (quoting *Campbell*, 510 U.S. at 591). The inquiry is, therefore, "necessarily intertwined with Factor One; the more the objective of secondary use differs from that of the original, the less likely it will supplant the commercial market for the original." *Yang*, 405 F. Supp. 3d at 548 (quoting *Harper & Row*, 471 U.S. at 566). Because Magistrate Judge Parker appropriately found Defendant's use "non-transformative and for commercial purposes," the presumption of market harm applies. (Report at 14.)

Moreover, Plaintiff is "in the business of licensing . . . photographs to online media platforms," such as Defendant, and plausibly alleges that "there was market demand for the Photograph given the widespread publicity surrounding the 'Joker' movie." (*Id.*) Accordingly, Magistrate Judge Parker appropriately concluded that Defendant deprived Plaintiff of revenue by publishing the Photograph without paying a license fee. (*Id.*) Further, if this Court were to deem Defendant's use to be fair, it would allow other companies to do the same, effectively destroying Plaintiff's business and the freelance photography market, as a whole. (*Id.*) Magistrate Judge Parker, thus, rightly concluded that this element of the fair use inquiry "weighs against a finding of fair use." (*Id.* at 15.)

## III. CONCLUSION

Magistrate Judge Parker correctly found that "at least three out of the four fair use factors weigh" against Defendant's claim of fair use and that Plaintiff's complaint "should not be dismissed on this basis." (Report at 16.)

8

Magistrate Judge Parker's Report is ADOPTED. Defendant's motions to dismiss Plaintiff's complaint for failure to state a claim (ECF Nos. 16, 20) are DENIED. The Clerk of Court is directed to close the motions accordingly.

Dated: New York, New York
      February 23, 2021

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge
